**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE | : | CHAPTER 13 |
| | : | |
| GIRTHA BROWN | : | CASE NO: 25-14526DJB |
| | : | |
| | : | |
| Debtor | : | |
| | : | |
| _____: | | |

**MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION
OF THE SECOND AMENDED PLAN**

Debtor, Girtha Brown, seeks confirmation of the Second Amended Plan. For the reasons that follow, the Plan should be confirmed.

**FACTUAL AND PROCEDURAL BACKGROUND**

Debtor filed the instant voluntary petition under chapter 13 of the Bankruptcy Code on November 6, 2025. Debtor filed the Second Amended Plan on June 4, 2026. [1] The Standing Chapter 13 Trustee has not objected to confirmation as of the date of this memorandum. Creditor Midfirst Bank ("Midfirst") has filed an objection to the plan, raising the issues and identifying perceived flaws, as discussed more fully below.

---

[1] The Second Amended Plan was filed to correct a small error with respect to Proof of Claim No. 3, filed by the Internal Revenue Service. Although the First Amended Plan was fully funded to pay all unsecured claims in full, Debtor's counsel inadvertently failed to properly treat the $843.14 portion of the claim that is classified as priority. The Second Amended Plan simply moves that portion to Part 3 of the Plan. The IRS has agreed to waive the 28-day service requirement, and all other claims are treated exactly the same as they were in the First Amended Plan.

**LEGAL ARGUMENT**

As an initial matter, while the Debtor acknowledges that, while she has the ultimate burden of persuasion that the proposed chapter 13 plan meets all the statutory requirements for confirmation. In re Cope, 2010 WL 376380, *4 (Bankr. E.D. Pa. 2010)(citations omitted), the creditor nevertheless "has the initial burden of articulating a clear and cognizable objection." In re Vincente, 257 B.R. 168, 177 (Bankr. E.D. Pa 2001). Many of the issues raised by Midfirst fail to meet that initial burden.

**Section 1325 (a) Are Not Mandatory Requirements for Confirmation**

Midfirst's assertion that the plan does not "comply" with, *inter alia* § 1325(a)(5) of the Code is premised on an unsupportable foundation that this section of the Code is a requirement placed upon debtors. This question was examined in-depth and answered in the negative by the Third Circuit Court of Appeals in In re Szostek, 886 F.2d 1405 (3d Cir. 1989). There the Court compared this section to clearly mandatory language found in § 1322, "which unequivocally states 'the plan shall' do three things." Id. at 1411.

> By comparison, the language of § 1325(a) states that 'a court shall confirm a plan if' certain things occur. However, it does not state 'only if' the described events occur. Thus, the logical interpretation is that if the conditions of § 1325(a) occur, the court *must* confirm the plan. On the other hand, if the conditions of § 1325(a) are not met, although the requirements of 1322 are fulfilled, the court has the discretion to confirm the plan.

Id. The Court found further support in § 1129, which actually specifies that the court shall confirm a plan "only if" certain requirements are met. Id. Even if the Court found that all the conditions of §1325(a)(5) are not met, the real issue is whether the Court should exercise its discretion and confirm the plan. Debtor respectfully suggests that it should.

**Debunking Midfirst's Objections/Observations to the Plan**

Paragraph 2 of the objection appears to take issue with the fact that the plan pays it in full, "despite the underlying loan not maturing until after the plan period ends." Midfirst fails to cite to any provision of the code, rules, or case law that precludes a debtor from paying an unmatured secured debt in full. Without more, this "objection" should be overruled.

Similarly, Paragraph 3, of the objection states that the Plan "fails to acknowledge that the debtor will assume direct responsibility for maintenance of [real estate] taxes and insurance." While true, Midfirst fails to articulate <u>any</u> legal basis for w hy this is relevant.[2] There is simply no requirement that a plan have such a provision. These items are clearly budgeted in Schedule J, and Debtor has provided proof of homeowners insurance on the property that is secured by Midfirst's claim. Even assuming this "objection" is grounded in a concern for adequate protection, a creditor is not entitled to be placated by plan provisions about every concern that may potentially arise in the future. Section 362(d) provides a creditor an adequate recourse should that issue arise in the future.

Paragraph 4-5 appear to challenge, without citing a scintilla of evidence, that Debtor cannot afford the monthly plan payments and the unusual large lump sum payment at the end of the plan is speculative. In theory, this is actually a valid objection. In practice, Midfirst once again fails.

Typically, a chapter 13 debtor meets her burden of demonstrating the viability of a chapter 13 plan based upon future income by showing a stable employment history, present employment, a current net monthly income level, or some other funding source sufficient to make proposed plan payments. <u>Id.</u>, at *5 (citing <u>In re Nottingham</u>, 228 B.R. 316, 321 (Bankr. M.D. Fla. 1998)). Here, the Trustee has not raised any objections as to Debtor's ability to pay, and the Debtor has been

---

[2] Notably, Midfirst fails to allege that Debtor is <u>not</u> insuring or paying her real estate taxes.

paying consistently through voluntary wage garnishment, from a job she has held for twenty-five years Doc. No. 9. A printout of the Trustee's ledger, to which Midfirst has access as a creditor, shows that Debtor's wage garnishment payments have been timely and consistently received by the Trustee.

In addition, the large lump sum payment in month 23 of the proposed plan comes from a large payout that Debtor will receive when she retires under the City of Philadelphia's Deferred Retirement Option Plan (DROP). At the meeting of creditors, at which Midfirst chose not to appear, the Trustee questioned Debtor about her DROP payment and was satisfied that it is not "speculative," as alleged by Midfirst. Debtor has provided Midfirst the same documentation provided to the Trustee, evidencing her entitlement to this large payment.

Finally, Midfirst cites to 11 U.S.C.A. § 1325(a)(5)(B)(iii)(I), arguing that the plan does not provide "equal monthly payments." This provision, added by Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), would no doubt seem facially appealing by a creditors attorney seeking to raise all possible objections but failing to appreciate the actual impact that enforcing this provision would have on the practice in this district. Typically upon confirmation, the trustee makes a large distribution of the funds he has been holding from the Debtor's payments up to confirmation. Typically a large secured creditor like a mortgage holder get the lion's share of that distribution, as well as the larger share of every monthly plan payments following confirmation. That creditor also benefits when the trustee requires "step-up" plans for situations where it is clear the debtor's income will increase after, for example, paying of a car loan or retirement loan, freeing up extra income. These would run afoul of a strict interpretation of § 1325(a)(5)(B)(iii)(I).

While Midfirst certainly cites no authority, there is some support for its interpretation in an early post-BAPCPA decision by the Hon. Bruce Fox.  In re Soppick, 516 B.R. 733 (Bankr. E.D. Pa. 2014), involved  proposed plan provided for distributions to a Borough, which was a secured claim holder, on its allowed secured claim via monthly payments, followed by a lump sum or balloon payment.  Albeit upon somewhat different terms, the court held that 11 U.S.C.A. § 1325(a)(5)(B)(iii)(I), would seemly preclude the confirmation.  516 B.R. at 753-54.

Debtor submits that the court in Soppick was clearly more influenced by the numerous attempt of that debtor to propose a feasible plan and the speculative nature of the lump sum payment dependant on litigation.  Moreover, other courts have taken a more pragmatic approach to confirming otherwise feasible plans involving lump-sum payments.  See In re McGrath, 625 B.R. 774 (Bankr. D. N.M. 2020); In re Olsen, 604 B.R. 790, 804 (Bankr. W.D. Wis. 2019);  In re Cochran, 555 B.R. 892 (Bankr. M.D. Ga. 2016) (all allowing confirmation of Chapter 13 plans with balloon payments)..

Finally, on its face § 1325(a)(5)(B)(iii)(I) only applies if the property to be distributed is in the form of periodic payments.  It does not mandate periodic payments to the objecting secured creditor.   If Midfirst wishes to press such a  literal interpretation, debtor will amend the plan to provide only ONE lump sum payment to Midfirst at the END of the plan. Such a plan would meet this provision as interpreted by Midfirst.

**CONCLUSION**

For the reasons stated above, the Debtor respectfully requests that the Court enter an Order

Confirming the Second Amended Plan.


                    /s/ Alfonso Madrid
ALFONSO MADRID, ESQ.
Community Legal Services of Philadelphia
Attorney for Debtor
1410 W. Erie Ave.
Philadelphia PA 19140
(215) 215-227-4795
(215)227-2435
amadrid@clsphila.org